The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.



Dated: February 14 2023

Mary Ann Whipple
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 21-61088 |
| | ) | |
| Christine A. Miller | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 21-06028 |
| | ) | |
| Countryside Service Company | ) | JUDGE MARY ANN WHIPPLE |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Christine A. Miller | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OF DECISION

This adversary proceeding is before the court for decision after trial on Countryside Service Company's ("Plaintiff") complaint seeking an exception to discharge for the debt owed by Defendant Christine A. Miller ("Defendant" or "Miller"). Defendant is the debtor in the underlying Chapter 7 case, in which she has received her discharge. Plaintiff contends Defendant owes it a debt resulting from damages to real property owned by Plaintiff and that the damages were due to willful and malicious injury. As a result, Plaintiff asserts that the debt should be excepted from Defendant's Chapter 7 discharge under 11 U.S.C. § 523(a)(6).

The district court has original and exclusive jurisdiction over Defendant's underlying Chapter 7 bankruptcy as a case under Title 11. 28 U.S.C. § 1334(a). This adversary proceeding is a civil proceeding arising in the Chapter 7 bankruptcy case and arising under Title 11 over which the district court has original jurisdiction. 28 U.S.C. § 1334(b). Defendant's Chapter 7 case and all proceedings arising in it, including this adversary proceeding, have been referred by the district court to this court for decision. 28 U.S.C. § 157(a) and General Order 2012-7 entered by the United States District Court for the Northern District of Ohio. This adversary proceeding is a core proceeding in which this court can make a final determination because it involves dischargeability of a particular debt. 28 U.S.C. § 157(b)(1) and (b)(2)(I).

This memorandum of decision constitutes the court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, applicable to this adversary proceeding under Rule 7052 of the Federal Rules of Bankruptcy Procedure. Regardless of whether specifically referred to in this Memorandum of Decision, the court has examined the submitted materials, weighed the testimony of the three witnesses, considered all the evidence, and reviewed the entire record of the case. As a general matter, the court found the testimony of all three witnesses credible. Based upon that review, and for the reasons discussed below, the court finds that Defendant is entitled to judgment in her favor.

## FINDINGS OF FACT

This proceeding arises out of damages to an apartment owned by Plaintiff and rented to Defendant. Craig Nelson is the owner and managing member of Plaintiff Countryside Service Company. Approximately five years ago, Countryside purchased apartments located at East Branch Circle, NE in Canton, Ohio. One of the legacy tenants living in those apartments was Christine Miller. Miller has lived there since 1997. Nelson testified that maintenance issues were addressed by a maintenance subcontractor, Joseph Schilling. In general, Nelson only went into apartments if there was a problem.

Beginning in 2018, Nelson stated that he received complaints from tenants next door to Miller's apartment regarding odors and cats loitering near her apartment. A request from Nelson in 2018 to see Miller's apartment was denied. Miller testified that the request for inspection was denied because Miller's boyfriend removed the source of the odor, a dead animal in a windowsill. Miller stated that the odor dissipated negating the need for the inspection. So she declined the request for entry. Miller stated that Nelson responded that the next time this occurred, she should contact Schilling.

Another request for inspection occurred in 2020. This request was also denied. Miller stated that she declined this request because she was embarrassed by the mess in her apartment. She stated that Nelson did not allow her time to clean and needed to proceed with the inspection. Nelson was unable to

2

get in her apartment on his own as permitted under the lease because the storm door was locked, and he did not have a key to unlock it.

Miller began living at 1923 East Branch Circle, NE, Canton, Ohio in August 1997. She testified that she was diagnosed with a depressive disorder in the spring of 1997 and is currently under treatment for her condition. Miller stated that a breakup with her boyfriend and reduced job hours contributed to her disorder. She testified that she felt her medication was not working anymore and she was not able to seek treatment for what was not working. Miller stopped pursuing treatment because of mounting medical bills in late 2018. She characterized her spiraling situation at that time as not caring, she did not want to socialize, and it took everything within her to go to work. She described her situation at work as also being affected as she was written up for having an odor on her clothing and for chronic absenteeism. Miller felt socially isolated. Because she did not have sufficient funds, she suspended her trash service.

Miller testified that the key to the storm door was given to her by the previous landlord and she was under the impression he kept one for himself. She also acknowledged that she avoided inspection of the apartment in 2020 because of "absolute embarrassment" of the situation and fear she would be removed.

Miller was served with a "Notice to Leave the Premises" in May 2020. The Notice to Leave cited "[f]ailure to allow owner to enter property for inspection" as grounds for eviction. [Plf. Ex. 4]. Miller moved out in mid-July 2020.

When Miller vacated the property, she left more than half of her personal belongings in the apartment. Miller disputed there were dead cats in the apartment but acknowledged that she left her door open at times. She stated she did not intend to damage the apartment. On cross-examination, Miller stated she knew what she did was "not normal" and knew that people do not live that way intentionally. She stated that no one would want their landlord to see them living in that mess. She testified that it was her intention to clean up the apartment but she was unable to because of the eviction process. She left with just a few of her things because she was overwhelmed. Nor did she ask anyone to help her move her things due to embarrassment over the situation.

After Miller vacated the premises, both Nelson and his maintenance subcontractor, Joseph Schilling, testified as to the unlivable condition of the apartment. The photos of the interior of the apartment when Miller left confirm a mess both shocking and sad. [Plf. Ex. 1]. Nelson testified that he lost other tenants after her eviction due to the cat odors coming from Miller's apartment. When Nelson was finally able to get into the apartment he was unable to enter the unit because of the odor, trash, dead animals, flies, fleas, urine and feces. Schilling testified, as the photos confirm, that the apartment was in

3

an "unlivable condition" that required a total "gut job." Even after the apartment was gutted, the odor remained in the concrete. Nelson stated that the odor even impacted the adjoining unit.

On April 12, 2021, the Court of Common Pleas for Stark County issued an Order for Default Judgment in favor of Plaintiff Countryside Service Company and against Miller in the amount of $56,432.18. [Plt. Ex. 5]. Pursuant to the parties' stipulations, the amount of the repairs to the apartment is not disputed. [Doc. # 28].

On August 11, 2021, Defendant filed her petition for relief under Chapter 7 of the Bankruptcy Code. [Case No. 21-61088]. Plaintiff timely commenced this adversary proceeding, alleging the damages to the apartment occupied by Defendant are excepted from discharge under 11 U.S.C. § 523(a)(6).

## LAW AND ANALYSIS

Section 523(a)(6) excepts a debt from discharge "for willful and malicious injury by debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). To prevail under § 523(a)(6), the creditor must prove by a preponderance of the evidence that the injury from which the debt arises was both willful and malicious. *MarketGraphics Rsch. Grp. v. Berge (In re Berge)*, 953 F.3d 907, 916 (6th Cir. 2020), *cert. denied*, 141 S.Ct. 1057 (2021). The absence of either of these factors creates a dischargeable debt. *Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298, 306 (B.A.P. 6th Cir. 2004). Exceptions to discharge are strictly construed against the creditor, *Rembert v. AT&T Universal Card Servs. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998), and narrowly construed in the debtor's favor, *In re Trantham*, 304 B.R. at 306.

Addressing the "willful" requirement of § 523(a)(6), the Supreme Court decided "the (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts" and held "[t]he word 'willful' in (a)(6) modifies the word 'injury' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original). Guided by the Sixth Circuit's interpretation of *Geiger*, bankruptcy courts are directed to determine "either that (i) the actor desired to cause the consequences of the act or (ii) the actor believed that the given consequences of his act were substantially certain to result from the act." *In re Trantham*, 304 B.R. at 307, citing *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999). This subjective approach adopted by the Sixth Circuit "ask[s] whether the debtor himself was motivated by a desire to inflict injury." *In re Berge*, 953 F.3d at 915. "[I]ntent may be inferred from the circumstances of the injury." *Id.*

The second inquiry under a § 523(a)(6) analysis considers whether the injury was malicious. The Sixth Circuit has defined malicious as "conscious disregard of one's duties or without just cause or excuse;

4

it does not require ill-will or specific intent to do harm." *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986), *citing*, *Tinker v. Collwell*, 193 U.S. 473, 486 (1904). "Stated differently, '[t]here must also be a consciousness of wrongdoing . . . It is this knowledge of wrongdoing, not the wrongfulness of the debtor's actions, that is the key to maliciousness under § 523(a)(6)." *Kraus Anderson Capital, Inc. v. Bradley (In re Bradley)*, 507 B.R. 192, 204 (B.A.P. 6th Cir. 2014) (quoting *ABF, Inc. v. Russell (In re Russell)*, 262 B.R. 449, 455 (Bankr. N.D. Ind. 2001)).

Considering the second inquiry, that of malicious injury, the focus is on the knowledge or consciousness of wrongdoing by the debtor. In this regard, Miller testified that she was embarrassed by her situation. She testified, "I knew what I did was not normal." She stated that she knew "people do not live that way intentionally" and "I know I shouldn't of been living that way." She further stated that "No one would want their landlord to see them living in that mess." Miller's testimony affirms she knew her living situation was not acceptable. To establish this factor means there must be conscious disregard of such duties but it does not require malice. Miller's refusal to let Nelson into the apartment in 2020 shows that she had a consciousness of wrongdoing as to her landlord, regardless of her depressive state. As she was aware of the wrongfulness of her living conditions, Plaintiff has established by a preponderance of the evidence that Miller's injury was malicious.

The willful factor presents a greater challenge. The requirement for liability under § 523(a)(6) in a landlord-tenant situation was aptly discussed by the court in *Hynard v. Merkman (In re Merkman)*, 604 B.R. 122 (Bankr. D. Conn. 2019), noting:

> [A] debt is still dischargeable even if the defendants, "left the [p]laintiff's property in a condition that was reminiscent of scenes from the movie 'Animal House,'" *Knowles v. McGuckin (In re McGuckin)*, 418 B.R. 251, 256 (Bankr. N.D. Ohio 2009). "Since *Kawaauhau v. Geiger* […] it has been recognized that a debtor's negligence in failing to maintain a rental property will not be, without more, sufficient to support a claim of nondischargeability under 11 U.S.C. § 523(a)(6)." *In re McGuckin*, 418 B.R. at 256. "in this regard, persons intending to cause harm do not normally do so by passive acts, such as failing to properly clean and maintain another's property." *In re McGuckin*, 418 B.R. at 256 (citing *Blocker v. Patch (In re Patch)*, 526 F.3d 1176, 1181-82 (8th Cir. 2008)). "Instead, the specific intent standard espoused in *Kawaauhau v. Geiger* will normally be accompanied by overt acts, or something closely akin thereto – e.g., purposely failing to act in order to produce a desired consequence." *In re McGuckin*, 418 B.R. at 256 (citing *In re Patch*, 526 F.3d at 1181-82).

*Id*. at 128. *See also In re Jacob*, 615 B.R. 259, 271 (Bankr. E.D. Wis. 2020) (determining factor is whether the debtor's conduct was negligent or intentional).

5

Miller testified that she did not intend the mess. She always thought the following day she would feel well enough to do the things she needed to do. She testified she was overwhelmed by basic tasks. She stated she was so embarrassed by her situation she did not ask anyone for help in moving. Indeed, when she moved out she failed to take more than half of her personal belongings. She testified that when she returned, she found those items in a dumpster outside the apartment but left them there. Miller stated she did not intend to damage the apartment.

The damages to Miller's apartment are more akin to that of spiraling neglect rather than overt acts. *Ward v. West (In re West)*, 446 B.R. 813, 817 (Bankr. N.D. Ohio 2010) (damages incurred for such things as failure to remove personal effects, not weeding and a ruined bathroom floor are easily ascribed to neglect). Evidence of even extensive damage without a motive to cause the injury does not establish the factor of willful injury. *In re Jacob*, 615 B.R. at 275 (rental house left in an entirely disorderly state with several months of dog waste falls on the spectrum between crudeness and gross negligence but not willful and malicious injury); *Smith v. Burgos (In re Burgos)*, No. 15-1020-WHD, 2015 WL 94355398 *3 (Bankr. N.D. Ga. 2015) ("evidence of burnt countertops, stained carpets, and crayon on the walls can be proof of utter recklessness or deplorable apathy"). *See also In re Merkman* 604 B.R. at 128-130 (collecting cases).

While Plaintiff offers the case *Roe v. Boland (In re Boland)*, 596 B.R. 532 (B.A.P. 6th Cir. 2019), B.A.P. *aff'd,* 946 F.3d 335 (6th Cir. 2020), in support of its claim under § 523(a)(6), *Boland* is distinguishable because the injury was caused by an overt act as opposed to a passive act. 596 B.R. at 550 ("Boland's intentional acts of creating and displaying the images of the Appellants in [] acts would lead an average person to know that Appellants' privacy and reputation interests would be invaded."). *But see Lombardi v. Picard (In re Picard)*, 640 B.R. 545 (Bankr. E.D. Pa 2022) (debtor's physical attack of creditor was malicious but not willful as debtor was experiencing an acute psychosis at the time of the attack); *Qui v. Zhou (In re Zhou)*, 331 B.R. 274 (Bankr. E.D. Mich. 2005) (debtor's paranoid schizophrenia caused her to believe false rape charges against a co-worker were true and therefore were willful but not malicious as they were not without just cause as debtor believed them to be true).

Taking the circumstances and testimony into account, the court finds the Plaintiff has failed to establish by a preponderance of the evidence that the injury to its real property was willful. The evidence does not support a finding that Defendant had a motive to cause the injury nor that she believed the consequences of her actions were substantially certain to result from her apathy and neglect.

Miller's testimony of her mental health struggles is credible. The court finds it persuasive that her abilities to function at work and in personal relationships were also impaired, showing the nonselective nature of her condition. She lived in the apartment for more than twenty years; it was her home that was

6

a mess. This was not a response directed to Nelson as landlord, or to the necessary effort to terminate her occupancy. Rather the situation evolved until it was uncontrollable and paralyzing. Gradually, then suddenly, as it were.

Applying the Sixth Circuit's subjective approach to the willfulness standard under § 523(a)(6), the court cannot find that Miller was motivated by a desire to inflict injury. There is no basis to infer intent from these undisputed circumstances, The state of her apartment was horrible and unhealthy. But the passive conduct of Defendant in letting animals run amok, leaving junk and waste everywhere and then failing to clean it up as the mess escalated was neglectful, even grossly neglectful, but in the words of the court in *Burgos* evidence of "deplorable apathy," not willful injury.

## **CONCLUSION**

For the foregoing reasons, the court finds Plaintiff has proven by a preponderance of the evidence that the injury was malicious but has failed to prove by a preponderance of the evidence that the injury was willful under 11 U.S.C. § 523(a)(6).

The court will enter a separate judgment against Plaintiff and in favor of Defendant.

# # #